THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| STACY GRAHAM, on behalf of himself and all others similarly situated, | § § § | NO. MO-15-CV-135-DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| JET SPECIALTY, INC., | § § | |
| Defendant. | § § § | |

ORDER GRANTING IN PART AND DENYNG IN PART
PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY A
COLLECTIVE ACTON AND TO ISSUE NOTICE

Before the Court is a Motion to Conditionally Certify a Collective Action and to Issue Notice filed by Plaintiff Stacy Graham ("Graham" or "Plaintiff"), on behalf of himself and all others similarly situated. (Dkt. # 12.) On January 11, 2016, the Court heard oral argument on the Motion. James M. Loren, Esq., appeared on behalf of Plaintiff; Russell D. Cawyer, Esq., appeared on behalf of Defendant Jet Specialty, Inc. ("Jet" or "Defendant"). After careful consideration of the memoranda in support of and in opposition to the motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Conditionally Certify a Collective Action and to Issue Notice. (Dkt. # 12.)

1

FACTS

This case arises out of Plaintiff's employment by Defendant as a delivery driver.  Defendant operates an oil well part sales and distribution company throughout Texas, New Mexico, and Oklahoma.  ("Am. Compl.," Dkt. # 4 ¶ 19, Dkt. # 12 at 9.)  Graham worked for Defendant as a delivery driver in Defendant's Odessa, Texas office location from March 1, 2013, to April 30, 2014.  (Am. Compl. ¶¶ 7–8; Dkt. # 12 at 1.)  His primary duties were to drive and deliver parts to customers throughout Texas.  (Dkt. # 12 at 9.)  As part of these duties, Graham would receive a customer purchase order from Jet, load the ordered parts at the Jet warehouse, and deliver those parts to customer locations throughout West Texas.  ("Graham Decl.," Dkt. # 19, Ex. A ¶ 6.)

Four other individuals, all former delivery drivers for Jet, have filed Consent to Join Suit with this Court; each submitted a declaration in support of Plaintiff's Motion for Conditional Certification.  ("Benally Decl.," Dkt. # 12, App. 9–10; "Martin Decl.," Dkt. # 12, App. 11–12; "Dutton Decl.," Dkt. # 12, App. 13–14; "Lopez Decl.," Dkt. # 12, App. 15–16.)  Each declarant alleges that his duties as a delivery driver included receiving purchase orders from Jet, loading the ordered parts onto a truck at the Jet warehouse, and driving a truck to deliver the items to Jet customers.  (Benally Decl. ¶ 5; Martin Decl. ¶ 4; Dutton Decl. ¶ 5; Lopez Decl. ¶ 5.)

2

Plaintiff alleges that Defendant's policy was to pay delivery drivers a flat salary, and that neither he nor similarly situated delivery drivers were paid overtime for any hour worked over forty hours per week.  (Am. Compl. ¶¶ 3, 15–17; Dkt. # 12 at 3, 10.)  Graham claims that he and other similarly situated drivers were never managers, nor did they otherwise hold positions that would cause them to be exempt from the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, overtime pay requirement.  (Dkt. # 12 at 3.)  Graham's declaration states that he routinely worked 75–80 hours per week and up to 100 hours per week when he was on call.  (Graham Decl. ¶ 7.)  Each declarant states that he worked overtime hours but was never paid overtime pay.  (Benally Decl. ¶ 6; Martin Decl. ¶ 5; Dutton Decl. ¶ 6; Lopez Decl. ¶ 6.)  All declarants but Mr. Martin state that they were paid a flat salary.  (Graham Decl. ¶ 7; Benally Decl. ¶ 6; Dutton Decl. ¶ 6; Lopez Decl. ¶ 6.)

On August 27, 2015, Plaintiff filed a complaint in this Court alleging violations of the FLSA.  (Dkt. # 1.)  On September 9, 2015, Plaintiff amended his complaint as a collective action.  (Am. Compl.)  Plaintiff seeks unpaid overtime wages, liquidated damages, and attorneys' fees and costs on behalf of himself and all other similarly situated employees who have been employed by Jet as delivery drivers in the past three years.  (Id. ¶¶ 18–22.)  Between September 9 and September 15, 2015, four former delivery drivers for Jet filed their consent to join

3

the suit.  (Dkts. ## 5, 6, 8, 9.)  On November 9, 2015, Plaintiff filed the instant

Expedited Motion to Conditionally Certify FLSA Collective Action and Authorize

Notice, with supporting documentation, on behalf of himself and all similarly

situated persons.  (Dkt. # 12.)  Defendant filed a response in opposition on

December 7, 2015.  (Dkt. # 18.)  Plaintiff filed a Reply on December 14, 2015.

(Dkt. # 19.)

<u>LEGAL STANDARD</u>

The FLSA requires employers to compensate an employee one and

one-half times the regular rate for each hour worked in excess of forty hours a

week.  29 U.S.C. § 207(a)(1).  The FLSA provides a cause of action to any

employee who was not appropriately compensated for overtime work, and allows

"similarly situated" employees to give written consent to join the lawsuit.  <u>Id.</u>

§ 216(b); <u>see also</u> <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516,

518 (5th Cir. 2010) ("Section 216(b) only authorizes such representative actions to

be filed on behalf of individuals who have given their 'consent in writing to

become . . . a party'" (quoting 29 U.S.C. § 216(b)).  This collective action

mechanism allows "[s]imilarly situated employees [to] 'opt-in' to a lawsuit under

§ 207(a) to benefit from a judgment."  <u>Walker et al. v. Honghua Am., LLC</u>, 870 F.

Supp. 2d 462, 465 (S.D. Tex. May 7, 2012).

Conditional certification under § 216(b), which allows potential plaintiffs to "opt in" to a lawsuit, does not have the same legal effect as class certification pursuant Federal Rule of Civil Procedure 23, where class members must "opt out" of the lawsuit to avoid being bound by the judgment. Sandoz v. Cingular Wireless LLC, 533 F.3d 913, 916 (5th Cr. 2008); see also Genesis Healthcare Corp v. Symczyk, 133 S. Ct. 1523, 1530 (2013) (determining that conditional certification "does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court.").

District courts apply one of two tests when determining whether a group of employees or former employees is similarly situated, warranting conditional class certification in a § 216(b) action. The first test is a two-step inquiry set out in Lusardi v. Xerox Corp, 118 F.R.D. 351 (D.N.J. 1987). Under Lusardi, "the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members." Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213–14 (5th Cir. 1995) (overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)). The second step under Lusardi is conducted at the

5

close of discovery when there is more information available to the court; at this stage, the court, pursuant to a defendant's motion that the opt-in plaintiffs are not similarly situated, may decertify the class, and dismiss the opt-in plaintiffs without prejudice. Id. at 1214. The second test used by district courts is set out in Shushan v. Univ. of Colo. at Boulder; courts following the Shushan approach typically require the plaintiff seeking to conditionally certify a class to "satisfy all of the requirements of rule 23, *insofar as those requirements are consistent with . . . § 216(b)."* 132 F.R.D. 263, 265 (D. Colo. 1990). Courts using the Shushan approach do not utilize a second "decertification" step at the conclusion of discovery, because the threshold for conditional certification is much higher than under the Lusardi test. Id. While the Fifth Circuit has not adopted a test, "most federal courts have adopted the Lusardi test when deciding these issues." Pedigo v. 3003 S. Lamar, LLP, 666 F. Supp. 2d 693, 696 (W.D. Tex. 2009) (quoting Morales v. Thang Hung Corp., No. 4:08–2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009)).

Using the Lusardi test, "[t]he threshold issue to certifying a collective action under the FLSA is whether the plaintiff can show the existence of a class whose members are 'similarly situated.'" Dyson v. Stuart Petroleum Testers, Inc., 308 F.R.D. 510, 512 (W.D. Tex. Aug. 27, 2015). "[T]his determination is made using a fairly lenient standard, and typically results in 'conditional certification' of

a representative class." <u>Mooney</u>, 54 F.3d at 1214; <u>see also</u> <u>Dyson</u>, 308 F.R.D. at

512.  Where a district court grants conditional certification, "putative class

members are given notice and the opportunity to 'opt-in.'"  <u>Mooney</u>, 54 F.3d at

1214.

<u>ANALYSIS</u>

I. <u>Whether Plaintiff has made a sufficient showing to obtain conditional</u>
<u>certification</u>

A plaintiff pursuing an FLSA claim and seeking class certification

must make three showings to the court: "(1) there is a reasonable basis for

crediting the assertion that aggrieved individuals exist, (2) those aggrieved

individuals are similarly situated to the plaintiff in relevant aspects given the

claims and defenses asserted, and (3) those individuals want to opt-in to the

lawsuit."  <u>McCloud v. McClinton Energy Group, L.L.C.</u>, No. 7:14-CV-120, 2015

WL 737024, at *3 (W.D. Tex. Feb. 20, 2015) (quoting <u>Casanova Gold's Tex.</u>

<u>Holdings Grp., Inc.</u>, No. 5:13-CV-1161-DAE, 2014 WL 6606573, at *2 (W.D.

Tex. Nov. 19, 2014).  The sufficiency of each of Plaintiff's showings will be

evaluated below.

A. <u>Whether there is a Reasonable Basis for Crediting the Assertion that</u>
<u>Aggrieved Individuals Exist</u>

At the notice stage, a district court may credit the assertion that

aggrieved individuals exist where "there is a factual nexus that binds the named

plaintiffs and potential class members as victims of a particular alleged policy or practice." Black v. Settlepou, P.C., No. 3:10–CV–1418–K, 2011 WL 609884, at *3 (N.D. Tex. Feb. 14, 2011).  At this stage of the litigation, "allegations in pleadings and affidavits are generally sufficient to support a claim for conditional certification" and establish a sufficient factual nexus to allow notice of the lawsuit to potential opt-in plaintiffs.  Pacheo v. Aldeeb, No. 5:14–CV–121–DAE, 2015 WL 1509570, at *3 (W.D. Tex. Mar. 31, 2015).  These affidavits may contain knowledge "based upon their own observations [of other employees] and experiences during their employment." Lee v. Metrocare Servs., 980 F. Supp. 2d 754, 764 (N.D. Tex. Oct. 30, 2013) (citing U.S. v. Cantu, 167 F.3d 198, 204 (5th Cir. 1999)).  Such affidavits, and allegations contained therein, need not be in a form admissible at trial; rather, alleged facts based upon reasonable personal observations by the declarants form sufficient proof even if they are "couched in general terms." Dyson, 308 F.R.D. at 514; see also Villegas v. Grace Disposal Sys., LLC, No. H–13–320, 2014 WL 793977, at *5 (S.D. Tex. Feb. 27, 2014) (finding that opt-in plaintiffs who each alleged they were paid a flat rate without overtime pay "made the minimal showing that putative class members were together the victims of a single decision, policy, or plan").

Here, each of the five affiants alleges that he was hired by Jet as a delivery driver, responsible for loading customer purchase orders onto a truck and

delivering them to customers throughout Western Texas.[1]  (Graham Decl. ¶¶ 3, 6; Benally Decl. ¶¶ 3, 5; Marin Decl. ¶¶ 3–4; Dutton Decl. ¶¶ 3, 5; Lopez Decl. ¶¶ 3, 5.)  Four of the five declarants state that he was paid a flat salary.  (Graham Decl. ¶ 7; Benally Decl. ¶ 6; Dutton Decl. ¶ 6; Lopez Decl. ¶ 5.)  Each of the declarants states that he was not paid overtime pay as required by the FLSA.  (Graham Decl. ¶ 7; Benally Decl. ¶ 6; Martin Decl. ¶ 5; Dutton Decl. ¶ 6; Lopez Decl. ¶ 5.)  At this stage of litigation, these declarations reasonably demonstrate to the Court that there may be an aggrieved class of delivery drivers who Jet employed in the past three years.  Accordingly, the parties have made the first showing necessary to obtain conditional class certification.

B.  <u>Whether Aggrieved Individuals are Similarly Situated to the Plaintiff</u>

As established above, affidavits at this stage may be general.  <u>See</u> <u>McCloud</u>, 2015 WL 737024, at *4 n. 5 (collecting cases) (finding "interaction with fellow employees can be sufficient to establish personal knowledge" at this stage of the litigation); <u>also see</u> <u>Villarreal v. St. Luke's Episcopal Hosp.</u>, 751 F. Supp. 2d 902, 911–12 (S.D. Tex. Nov. 3, 2010) ("day-to-day work and interaction with other employees" is sufficient to support a finding of personal knowledge at this stage in the litigation.)  However, "FLSA violations at one of a company's multiple

---

[1] Four of the five drivers also allege that they delivered purchase orders to customers in New Mexico.  (Graham Decl ¶ 6; Martin Decl. ¶ 4; Dutton Decl. ¶ 5; Lopez Decl. ¶ 5.)

locations generally are not, without more, sufficient to support company-wide notice." McCloud, 2015 WL 737024, at *8 (quoting Rueda v. Tecon Servs., Inc. No. A. H–10–4937, 2011 WL 2566072, at *4–6 (S.D. Tex. June 28, 2011)) (explaining that individuals from certain locations would not be included in a conditional class, where no employee from the location submitted an affidavit in support of conditional certification).

Jet objects to Plaintiff's request to include delivery drivers from all of Jet's Texas office locations, because the declarations submitted in support of his motion for conditional class certification were not based on personal knowledge of a companywide pay practice; rather, they were based upon knowledge of the pay practices at the Odessa, Texas office location.[2]  (Dkt. # 18 at 9.)  Accordingly, Jet requests that the Court limit the conditional class to those delivery drivers who are or were employed at the Odessa, Texas location.

All declarants but one state that he worked only in the Odessa, Texas location; only Mr. Dutton states that he worked at "various Western Texas yard location[s]" during his employment with Jet, but even Mr. Dutton does not state a specific employment location.  (Dutton Decl. ¶ 3.)   At this stage, the plaintiff has not demonstrated that delivery drivers at other Jet locations are subject to the same

---

[2] In support of this objection, Jet states that four of the five affiants claim only that they worked in the Odessa, Texas location.  (Dkt. # 18 at 12.)

pay practices.  Four affidavits attesting to similar compensation schemes at the Odessa location provide sufficient evidence that the delivery drivers at this office are similarly situated to the plaintiff in relevant aspects to support conditional certification for delivery drivers at the Odessa, Texas office location.  However, Plaintiff has not produced sufficient evidence that a comprehensive, company-wide pay practice exists outside the Odessa, Texas facility.  Accordingly, the class of similarly situated individuals is limited at this time to delivery drivers dispatched out of Odessa.

      C.   <u>Whether There is Evidence that Similarly Aggrieved Individuals Will Opt-in to the Suit</u>

"The final hurdle that Plaintiffs must overcome before obtaining conditional certification is showing that there are others who will likely desire to opt in" to the suit.  <u>Casanova</u>, 2014 WL 6606573, at *5; <u>see also</u> <u>Honghua Am.</u>, 870 F. Supp. 2d at 471–72 (summarizing cases and finding that some courts require evidence that potential plaintiffs "desire to opt-in," while others do not). Here, plaintiff submitted five affidavits, including his own, from individuals who have actually joined the suit; this constitutes an adequate showing that there are others who desire to opt-in to the suit.

Because plaintiff has demonstrated a basis for conditional certification, the Court **GRANTS IN PART** his motion for Conditional Class Certification, insofar as the class for certification is:

All persons employed by Jet Specialty, Inc. as delivery drivers, who
worked at Defendant's Odessa, Texas location from [insert 3 years prior
to date notice is sent], through [insert date notice is sent].

II. <u>Plaintiff's Proposed Notice to the Putative Class</u>

   A. <u>Scope of Requested Information</u>

       At this stage of an FLSA action, courts typically allow plaintiffs to

conduct limited discovery to obtain the names and contact information for potential

class members, so that they may provide notice of the suit.  <u>See</u> <u>Heeg v. Adams</u>

<u>Harris, Inc.</u>, 907 F. Supp. 2d 856, 865 (S.D. Tex. Oct. 31, 2012).  Limited

discovery of potential class members' "names, last known addresses, and

telephone numbers" is a "routine component of court-facilitated notice in FLSA

collective actions."  <u>Behnken v. Luminant Min. Co., LLC</u>, 997 F. Supp. 2d 511,

525–26 (N.D. Tex. Feb. 14, 2014) (granting disclosure of employees' names and

last known addresses but finding that "the need for compelled disclosure of

prospective class members' telephone numbers is outweighed by their privacy

interests"); <u>see also</u> <u>Garcia v. TWC Admin., LLC</u>, No. SA:14-CV-985-DAE, 2015

WL 1737932, at *4 (W.D. Tex. Apr. 16, 2015) ("[P]utative class members' names

and addresses are sufficient to ensure that notice is received.").  Where a court

permits discovery of employees' names and last known addresses, a plaintiff may

later request additional discovery of contact information for potential plaintiffs

whose notice is "returned . . . as undeliverable."  <u>Heeg</u>, 907 F. Supp. 2d at 865.

To facilitate contact with the putative class, Plaintiff requests the Defendants to produce, in electronic format, the names, all known addresses, all known phone numbers, dates of birth, all known e-mail addresses, driver's license numbers, social security numbers, and dates of employment for the class members employed at any time during the three years prior to the date of conditional class certification.  (Dkt. # 12 at 15.)  Plaintiff states that e-mail addresses are necessary so that class members have the option to execute their consent forms online through an electronic signature service.  (Id. at 14.)

Jet objects to the breadth of the requested contact information, and specifically objects to the request for e-mail addresses.  (Dkt. # 18 at 15–16.)  Jet claims it does not collect personal e-mail addresses for its employees, and is concerned regarding the security and formality of an online notice process.  (Id.)

In certain instances, courts in the Western District of Texas permit prospective plaintiffs to opt-in to a collective action using an e-signature service.  See Dyson, 308 F.R.D. at 517 (finding that no physical signature is necessary for opt-in consent to be valid).  Here, however, plaintiff has not alleged any facts suggesting that potential plaintiffs' last known addresses would be insufficient to send notice to potential plaintiffs.  Further, the plaintiff has not alleged a sufficient

basis to justify disclosure of phone numbers.[3]  The disclosure of birth dates,

driver's license numbers, and social security numbers would be overly invasive of

potential plaintiffs' privacy under any circumstances, and is not justified here.

Plaintiff is entitled to limited discovery of the names, last known addresses, and

dates of employment for all Jet employees who worked as a delivery driver

between in the past three years, determined from the date of this order.  Should

notices be returned to Plaintiff as undeliverable, he may request additional

discovery as to those individuals.  Defendants should provide this information to

Plaintiffs, in electronic form, within ten days from the date this order is issued.

   B.  Notice Form and Procedure

        It is appropriate for courts to be involved in the notice procedure from

an early stage.  Hoffmann-La Roche, 493 U.S. 165, 173 (1989) (stating that "court

intervention in the notice process" is proper at the district court level); see also

Villatoro v. Kim Son Restaurant, L.P., 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003).

Accordingly, this Court will evaluate Graham's proposed plan for contacting

potential plaintiffs, as well as the proposed notice and consent forms he submitted

---

[3] Plaintiff states that the phone numbers are necessary to verify the accuracy of the list provided by Defendant; Plaintiff proposes that it will contact former employees to determine whether any employee subject to the same payroll practice was omitted from the list.  (Dkt. # 12 at 15.)  Such "double-checking" is unnecessary and overly invasive of employee privacy.

to the Court.  (Dkt. # 12 at 13; "Prop. Notice," Dkt. # 12 App. 1–2; "Prop.

Consent," Dkt. # 12 App. 3–4.)

    1.  <u>Notice and Consent Procedure</u>

        Graham desires the notice and consent forms to be sent both by first

class and electronic mail within seven (7) days of receipt of the class list from

Defendant, and requests permission to hire a third party class action administration

company to oversee the mailing of the notice and forms.  (Dkt. # 12 at 13.)  Jet

does not object to the use of a third-party claims administrator, so long as the

contact information for potential class members is provided directly to the

administrator and is not disclosed to the Plaintiff.  (Dkt. # 18 at 15.)

        This Court approves notice via first-class mail, but does not approve

notice via electronic mail for the reasons stated above.  Jet did not cite any

authority justifying the restriction that information be shared with the claims

administrator only, and the court has found no such authority.  Accordingly, the

Court approves the use of a third-party claims administrator, should the parties

choose to use one, but does not require that Plaintiff be restricted from viewing the

information Jet discloses.

    2.  <u>Notice and Consent Form</u>

        Jet objects to Plaintiff's proposed notice on three grounds: (1) the

proposed language could give the appearance of judicial endorsement of the claims

(Dkt. # 18 at 18); (2) the proposed notice does not inform potential opt-ins that they are not required to hire plaintiffs' attorney (id. at 19); (3) the proposed notice form does not inform plaintiffs of the obligations they may incur as opt-in plaintiffs (Dkt. # 18 at 19–20).  Further, Jet objects to Plaintiff's proposed consent form on two grounds: (1) the consent form should state that it may be filed with the Court, rather than through Plaintiff's counsel (Dkt. # 18 at 19); (2) the consent form does not inform the potential plaintiff that he or she may hire the attorney of his or her choice (id.).  Plaintiff did not respond to any of these objections.

a.  Objections to Proposed Notice

1)  Appearance of Judicial Endorsement

Jet objects to language in Graham's proposed notice, claiming the language is "one-sided and misleading."  (Dkt. # 18 at 18.)  Specifically, Jet objects to the inclusion of the following sentences:

> [1] During the time you worked at Jet Specialty, you were compensated without receiving the ***required*** time and a half overtime premium for hours worked over 40 hours.
> [2] . . . you are ***entitled*** to double the amount you are owed as liquidated damages under the law.
> [3] . . .The Court has not decided who is right, but has authorized this notice to inform you of your right to join this lawsuit.
> [4] . . . If you want to claim additional wages in this case . . .

(Prop. Notice ¶¶ 1–3; Dkt. # 18 at 18) (emphasis added).

The Court agrees with Jet that the words "required" and "entitled" may mislead potential plaintiffs, because the merits of the case have not yet been decided. The notice must be reformed to explain that the issues of entitlement to overtime pay and liquidated damages have not yet been decided. As to the remainder of the language, the Court does not find that it is misleading to potential plaintiffs, or gives an in appropriate appearance of judicial endorsement.

2)  Possibility of Hiring Other Counsel

A notice form must inform potential class members that they are not required to retain Plaintiff's current counsel and that they may contact any attorney.  See Tolentino v. C&J Spec–Rent Servs. Inc., 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("[T]he notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case.")

Currently, the proposed notice reads:

"If you choose to join this suit, and agree to be represented through the driver's attorneys, your counsel in this action will be James M. Loren of the law firm Loren Law Group.  The firm's contact information is below. . ."

(Prop. Notice ¶ 5.)  The proposed notice does not explicitly state that Plaintiffs may contact any attorney to represent them in the case.  Accordingly, the notice must be reformed to include this information.

17

### 3)  Information Regarding Proposed Notice

Courts may require a Plaintiff in an FLSA collective action to amend a proposed notice form to inform opt-in plaintiffs of their potential financial liability in the event of an unfavorable judgment.  Behnken, 997 F. Supp. 2d at 524 (requiring plaintiffs to amend their proposed notice to inform potential opt-in plaintiffs that they "may be required to bear the costs of litigation" if their suit is unsuccessful).  District courts also may require a proposed notice form to state that opt-in plaintiffs may have to participate in discovery or sit for a deposition, absent a compelling showing that such an advisory would not be appropriate.  Roberts v. S.B. S. Welding, LLC, No. 3:14-CV-3617-B, 2015 WL 8773610, at *2 (N.D. Tex. Dec. 15, 2015).

Plaintiff's Reply does not directly address either of these issues, and does not provide any facts that suggest it would be inappropriate to inform opt-in plaintiffs of their potential financial liability or potential obligations as parties to the suit.  Accordingly, Plaintiff must amend the notice to include this information.

### b.  Objections to Proposed Consent Form

Opt-in consent forms may be submitted to Plaintiff's counsel, so long as the form does not include language *requiring* the forms to be submitted through Plaintiff's counsel.  See Behnken, 997 F. Supp. 2d at 525; Tolentino, 716 F. Supp. 2d at 655.  Further, as explained above, the notice or consent form *must* inform

potential class members that they may contact *any* attorney to represent them.

Currently, the consent form contains the following language:

> In the event the case is certified and then decertified, I authorize Plaintiffs' counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.

> I hereby designate Loren & Associates, P.A. to represent me in this action.

(Prop. Consent ¶¶ 4–5.)  This language may cause an opt-in plaintiff to believe that she must retain Plaintiff's counsel; further, it may cause an opt-in plaintiff to believe she could be obligated to participate in additional lawsuits.  Neither impression is permissible; the language must be reformed in accordance with the legal standards above.

### c.  Conclusion

The Court **ORDERS** that the parties meet and confer, and file a proposed Notice and Consent form to the Court within seven (7) days of this Order.  The Notice and Consent form must comply with the directives in this order.

### C.  Requested Response Period and Procedure

Graham requests permission to send a follow-up notice to all potential plaintiffs who did not respond to the initial notice, thirty days after the first notice is sent.  (Dkt. # 12 at 14.)  He also requests a 90-day response period of potential plaintiffs to submit their consent forms.  (Id. at 13–14.)  Each request is evaluated below.

19

1.   <u>Whether Follow-Up Notice is Appropriate</u>

"District courts are split as to whether reminder notices to potential class members are proper in FLSA actions," and may deny requests for reminder notices where the "plaintiff fail[s] to identify any reason why such notice [is] necessary." <u>Jones v. Cretic Energy Servs., LLC</u>, -- F. Supp. 3d --, 2015 WL 8489978, at *10 (W.D. Tex. Dec. 9, 2015) (citing <u>Guzelgurgenli v. Prime Time Specials Inc.</u>, 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012)).

Plaintiff requests permission to send a follow-up notice 30 days after the initial notice is sent, but does not list any specific reasons to support this request (Dkt. # 12 at 14; <u>see generally</u> Dkt. # 19), and Jet objects, stating that a follow-up notice is unnecessary and inappropriate (Dkt. # 18 at 16–17). Here, because Plaintiff has not listed any extenuating circumstances which would necessitate a follow-up notice, the court finds that a single notice is appropriate.

2.   <u>Whether a Ninety-Day Response Time is Appropriate</u>

In the Western District of Texas, "most courts appear to default to a notice period of 60 days, unless potential plaintiffs are difficult to contact because of their location or other extenuating factors warrant additional time." <u>McCloud</u>, 2015 WL 737024, at *10 (collecting cases). Plaintiff requests a 90-day window for class members to return their consent to Plaintiff's counsel for filing with the court,

but does not provide any special justification for the 90-day notice period[4] (Dkt. # 12 at 14); Jet objects to the request (Dkt. # 18 at 16–17).  Here, where the Plaintiff does not allege particular factors that would warrant the grant of additional time, the Court finds that a 60-day opt-in period is appropriate.

D. <u>Conclusion</u>

In is hereby **ORDERED** that the parties must meet and confer, and file a proposed Notice and Consent form to the Court within seven (7) days of this Order.  The Notice and Consent form must comply with the directives in this order.  It is further **ORDERED** that Defendants must produce, within ten (10) days of this Order, the names, last known addresses, and dates of employment for all current and former employees who worked as delivery drivers at Jet's Odessa, Texas location in the past three years.  It is further **ORDERED** that Plaintiffs are authorized to send the Court-approved notice and consent forms via First Class mail within seven (7) days of receipt of the class list from Defendant, and are permitted to hire a third party class action administration company if they deem

---

[4] Graham cites two cases in support of a 90-day opt-in period.  The first, <u>Flores v. Velocity Exp, Inc.</u>, grants a 90-day opt-in period, but does not explain its rationale in doing so.  No. 12–cv–05790–JST, 2013 WL 2468362, at *9–*10 (N.D. Cal. June 7, 2013).  The second, <u>Butler v. DirectSAT USA, LLC</u>, similarly grants a 90-day opt-in period, explaining that "numerous courts around the country have authorized ninety day opt-in periods for collective actions."  876 F. Supp. 2d 560, 575 (D. Md. 2012) (collecting cases from Maryland, Pennsylvania, and New York).  Neither case provides persuasive reasoning for this court to depart from precedent in the Fifth Circuit.

this appropriate. It is furtherer **ORDERED** that Potential plaintiffs are granted sixty (60) days from the date of which notice is mailed to submit consent to suit with this Court.

III. Gag Order

Plaintiff's proposed order contains language restriction communication between the Defendant and current and former employees, and Jet objects to the inclusion of this gag order (Dkt. # 18 at 17–18):

> Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former delivery driver about any matters which touch and concern the settlement of any outstanding wage clams or other matters related to this suit during the opt-in period. Defendant shall so instruct all of its managers. This Order shall not restrict Defendant from discussing with any delivery driver matters that arise in the normal course of business.

(Dkt. # 12, App. 5–6 at 2–3.)

Courts have broad, but "not unlimited," authority over "the conduct of both counsel and parties in FLSA collective actions." Garcia, 2015 WL 1737932, at *3. Such "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. (quoting Gulf Oil & Co. v. Bernard, 452 U.S. 89, 100 (1981)).

Jet objects to this restriction (Dkt. # 18 at 17–18), and Graham does not provide any explanation as to why this may be necessary (see generally Dkts. ## 12, 19).  Absent clear and specific findings on the record demonstrating the need for limitation on communication between the parties, the Court finds a gag order unnecessary.

CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the Plaintiff's Expedited Motion to Conditionally Certify FLSA Collective Action and Authorize Notice.

Plaintiffs' Motion for Conditional Certification (Dkt. # 12) is **GRANTED IN PART**. The conditional class is defined as follows: All persons employed by Jet Specialty, Inc. as delivery drivers, who worked at Defendant's Odessa, Texas location from [insert 3 years prior to date notice is sent], through [insert date notice is sent].

**IT IS FURTHER ORDERED** that the parties shall meet and confer regarding the  Notice to the Class and Consent form, and shall file with the Court a proposed Agreed Notice to the Class and Consent form for the Court's approval **within seven (7) days** of this Order.  The language in the Notice and Consent form must comply with this Court's findings in this Order.

**IT IS FURTHER ORDERED** that the Defendant produce, in a useable electronic format, the names, last known addresses, and dates of employment for all putative class members **within ten (10) days** of this order. Plaintiffs are free to move this Court to issue an order for more contact information if necessary.

**IT IS SO ORDERED**

**DATED:** Midland, Texas, January 11, 2016.

_____

David Alan Ezra
Senior United States Distict Judge